THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. THE GOLD AND STOCK TELEGRAPH COMPANY, Appellant.

The act of 1881 (Chap. 361, Laws of 1881), providing for raising taxes for State purposes upon certain corporations, is not violative of any provision of the Constitution of the United States.

Said act repeals, so far as taxation for State purposes is concerned, so much of the act of 1853 (Chap. 471, Laws of 1853), providing for the incorporation of telegraph companies, as provides for such taxation; and corporations organized under the latter act are liable to taxation under, and as prescribed by the former.

In an action against a corporation for a failure to comply with the requirements of said act of 1881, no interest should be allowed as damages, the statute prescribes the penalty for default in payment, and no other may be collected.

After a judgment had been rendered against a telegraph company for a failure to pay the tax imposed by the said act of 1881, and said judgment had been sustained on appeal to this court, a motion was made for a reargument, or for amendment of the remittitur, so as to make the judgment without prejudice to an application to the Supreme Court by the defendant, for leave to apply to the State for relief under the act of 1882 (Chap. 151, Laws of 1882), amending the act of 1881, by giving the comptroller and the board thereby constituted authority to settle the account against the corporation. *Held,* that the act had no relation to any issue in the action, and could not affect its determination; motion therefore denied.

(Argued December 10, 1884; decided January 20, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made on the first Tuesday of May, 1884, which affirmed a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 32 Hun, 491.)

The nature of the action and the material facts are stated in the opinion.

*Wager Swayne* and *Matthew Hale* for appellant. The law of 1853 establishes a rule which is effective to limit the taxation of the defendant company under the law of 1881. The latter controls the former to whatever extent their subject-matter is identical. (Bishop on Writ. Laws, 112 a ; *Long* v. *Culp,* 14 Kans. 412, 414 ; *Thorpe* v. *Adams,* L. R., 6 C. P. 125 ; *State, ex rel.,* v. *Goetz,* 22 Wis. 363 ; *De Winton* v. *Mayor,* etc., 26 Beav. 522 ; *Lyn* v. *Wyn,* 6 Bridg. 132 ; *State* v. *Kelley,* 34 N. J. L. [5 Vr.] 75, 78 ; *Pretty* v. *Lolly,* 28 Beav. 210 ; *People, ex rel. Westchester,* v. *Davenport Trustees,* 91 N. Y. 574 ; *State Tax on Foreign-held Bonds,* 15 Wall. 319.) To support a tax upon the " stock " or on the " franchise " of a corporation there must exist some value, actual or constructive, which is in the stock or in the franchise, and is reached when it is taxed. Upon this basis only a law imposing a tax upon a franchise can be sustained. (*Monroe Savings B'k* v. *City of Rochester,* 37 N. Y. 365 ; *State Railroad Tax Cases,* 92 U. S. 575 ; *People* v. *Home Ins. Co.,* 92 N. Y. 328 ; *Wilmington R. R.* v. *Reid,* 13 Wall. 264.) A tax upon the stock of a corporation is valid only because of some value, actual or constructive, inherent in the stock. (*Van Allen* v. *Assessors,* 3 Wall. 573, 584.) The alternative terms " franchise " or " business " are meant by the legislature to apply the one to foreign and the other to domestic corporations. (*People* v. *Home Ins. Co.,* 92 N. Y. 339 ; *People* v. *Commissioners,* 23 id. 192 ; *B'k of Commerce* v. *New York City,* 2 Black, 629 ; *City of Utica* v. *Churchill,* 33 N. Y. 239 ; *People* v. *Commissioners,* 4 Wall. 244 ; *Van Allen* v. *Assessors,* 3 id. 573 ; *Supervisors* v. *Stanley,* 105 U. S. 305 ; *People* v. *Commissioners,* 23 N. Y. 192 ; *People* v. *Home Ins. Co.,* 92 id. 344 ; *Provident Institution* v. *Massachusetts,* 6 Wall. 617.) The general tax law which was in force at the time of the passage of the law of 1853, and to which the law of 1853 immediately applied, imposed a tax upon the stock of corporations at large, using the

word " stock " in precisely the same sense, that is, subjecting to taxation precisely the same property or value as the word " franchise " is, by the law of 1881, employed to express and reach. (*Farmers' L. & T. Co.* v. *Mayor, etc.*, 7 Hill, 269 ; 2 Coke Inst. 308 ; *U. S.* v. *Wilson,* Bald. 78, 95 ; *County Seat of Linn County,* 15 Kans. 500 ; *Ruckmaboye* v. *Mottichund,* 32 Eng. L. & E. 83 ; *Russell* v. *Stephens,* 20 Vt. 49 ; Potter's Dwarris on Stat. and Const. 274.) The statutes of 1880 and 1881 recognized by not repealing the limitation enacted by the law of 1853. There is nothing in them contrary to or inconsistent with that limitation. (*McKenna* v. *Edmundstone,* 91 N. Y. 231 ; *Whipple* v. *Christian,* 80 id. 523.) The legislative intent is to tax telegraph companies on their franchise or business, on their gross earnings in the State. This shows a legislative recognition of the injustice of imposing on such companies a franchise tax based upon the property or earnings without the State. (*People* v. *Smith,* 88 N. Y. 576.) The court erred in directing a verdict for interest in addition to the ten per centum imposed by the statute. A tax is not a debt, and the State is not entitled to interest thereon unless expressly given by statute. (Hilliard on Taxation, 16, § 26 ; *City of Camden* v. *Allen,* 26 N. J. L. 398 ; *Pierce* v. *City of Boston,* 3 Metc. 520 ; *Shaw* v. *Pickett,* 26 Vt. 482 ; *Perry* v. *Washburn,* 20 Cal. 318 ; Hilliard on Taxation, 444, § 6 ; 28 Alb. L. J. 246 ; Cooley on Taxation, 300, note 4 ; *Western Union Tel. Co.* v. *State,* 55 Tex. 319 ; *Shaw* v. *Pickett,* 26 Vt. 482 ; 1 Desty on Taxation, 9 ; *Lane Co.* v. *Oregon,* 7 Wall. 71, 80 ; *Perry and Hale Counties* v. *Railroad Co.,* 65 Ala. 391, 401 (decided November, 1880). A judgment is not a contract, and interest thereon is given, not on the principle of an implied contract, but as damages for delay in performing the obligation imposed by law. (*O'Brien* v. *Young,* 95 N. Y. 428 ; *Sanders* v. *Railway Co.,* 94 id. 641.) The act of 1882 (Chap. 151) was a legislative construction of the act of 1881 (Chap. 361), and became a part of the law, and from the time of its enactment controlling. (Potter's Dwarris

on Statutes, 68 ; *People* v. *Supervisors*, 16 N. Y. 424 ; Cooley
on Const. Lim. 94; *General* v. *Early*, 12 Wheat. 136.)

*R. S. Guernsey* for Telegraph Companies similarly situated
as appellant.    The law of 1881 is general.    All laws relating
to taxation of telegraph properties are special and name them.
(Laws of 1853, chap. 471, § 3 ; Laws of 1881, chap. 361, § 6 ;
chap. 293 ; Laws of 1881, chap. 468, §§ 1, 13 ; Laws of 1884,
chap. 414.)    A general law will not, in the absence of a very
evident intent on the part of the legislature to. do so, anc which
intent must appear by the terms of the act itself, abrogate or
change the provisions of a special law, passed for particular
cases, constituting a class by themselves, for which the general
laws of the State do not profess to provide.    (*People* v. *B'd
of Assessors*, 39 N. Y. 85.)    Statutes which impose restric-
tions upon trade or common occupations, or which levy an ex-
cise or tax upon them, must be strictly construed.  (*Sewell*
v. *Jones*, 9 Pick. 412 ; *Mayer* v. *Davis*, 6 Watts & S. 376 ;
Dwarris on Statutes, 749.)    Even if the law of 1881 repealed
and superseded the act of 1853, still the capital stock or the
dividends upon so much of it as is invested and located out of
the State of New York cannot be taxed under the act of 1881
or any express law of that. nature.    (2 R. S. 387 § 1 ; *Am.
Un. Tel. Co.* v. *Middleton*, 80 N. Y. 408; Laws of 1881,
chap. 293 ; id. chap. 597 ; Laws of 1884, chap. 414 ; *Hoyt* v.
*Com'rs of Taxes*, 23 N. Y. 224 ; *People, ex rel. Pacific Mail
Steamship Co.*, v. *Com'rs of Taxes*, 1 T. & C. 611 ; affirmed,
58 N. Y. 242 ; *Pennsylvania* v. *Trenton Bridge Co.*, Am.
Law Reg., O. S. P. 298 ; *Howell* v. *State*, 3 Gill, 23 ; *State* v.
*Hull*, 1 Dutcher [N. J.], 561 ; *Commonwealth* v. *Standard Oil
Co.*, 101 Penn. St. 129 ; Potter on Corp. 255, note 1 ; *R. R. &
Bridge Co.* v. *District of Columbia*, 1 Mackey, 218 ; *R. R.
Co.* v. *Jackson*, 7 Wall. 262 ; *State Tax on Foreign-held Bonds*,
15 id. 300 ; *Commonwealth* v. *Standard Oil Co.*, 101 Penn.
St. 144 ; *Maltby* v. *Reading, etc., R. R. Co.*, 2 P. F. S. 146 ;
*McCulloch* v. *State of Maryland*, 4 Wheat. 316 ; *Binney's
Case*, 2 Bland's Ch. 142 ; *R. R. Bridge Co.* v. *District of*

*Columbia,* 1 Mackay, 218.)   The most that can be claimed under this act of 1881 is to assess *pro rata* that portion of the capital stock expended in the State of New York.   (*Commonwealth* v. *Standard Oil Co.,* 101 Penn. St. 130 ; *Pennsylvania* v. *Trenton Bridge Co.,* 9 Am. Law Reg. [O. S.] 298 ; *P., Ft. W., etc.,* v. *Com'rs,* 16 P. F. Smith [66 Penn. St.] 73 ; *State Tax on Foreign-held Bonds,* 15 Wall. 326 ; *Erie R. Co.* v. *Penn.,* 21 id. 492 ; *Com'rs* v. *N. C. R. R. Co.,* 2 Legal Opinion, No. 24, for April 13, 1872 ; *Commonwealth* v. *Standard Oil Co.,* 101 Penn. St. 133 ; 56 Am. Dec. 523, note.)

*D. O'Brien,* attorney-general, for respondent.   The act of 1881 (Chap. 361) is constitutional.   (*People* v. *Home Ins. Co.,* 92 N. Y. 328 ; *Slaughter-House Cases,* 16 Wall. 36, 81; *Litchfield* v. *Vernon,* 41 N. Y. 124; *People* v. *Mayor, etc.,* 4 id. 419.)   The act of 1853 in no manner affects or limits the application of the tax imposed by the act of 1881.   The former statute was repealed by the latter.   (1 R. S. 387, 388, § 3 ; id. 414, §§ 1, 2, 6, 10 ; id. 415, 416 ; *Ins. Co.* v. *Supervisors,* 4 Comst. 448 ; *Cotton Co.* v. *Supervisors,* 1 Barb. Ch. 434; *People* v. *Assessors,* 39 N. Y. 81 ; *State Tax on Foreign-held Bonds,* 15 Wall. 300 ; *People* v. *Gardner,* 51 Barb. 352 ; *People* v. *Commissioners,* 23 N. Y. 224.)   It was not only the intention of the legislature in this enactment, but also within the scope of its power, to impose a franchise tax to be estimated upon the entire capital of the company, regardless of its situation. (*La Plata Case,* 92 N. Y. 660 ; *Fire Association of Philadelphia,* id. 311 ; *Spring Valley Hydraulic Gold Co.,* id. 383.)   In construing a statute, its title is a legitimate subject of consideration in determining the legislative intent. (*People, ex rel. W. F. Ins. Co.,* v. *Davenport,* 91 N. Y. 574.) Even though a later statute is not entirely repugnant to a prior one, if it was intended to furnish the only rule in the case, it repeals the earlier statute.   (*Railroad* v. *Allen,* 16 Barb. 15 ; *People* v. *Brooklyn,* 69 N.Y. 605 ; *Pratt* v. *Munson,* id. 584 ; *Hickman* v. *Pinckney,* 81 N. Y. 211 ; *Moore* v. *Westervelt,* 3 Sandf. 765.)   The plaintiff was entitled to recover interest

on the tax from and after January 16, 1883. (3 Blackstone's Com. 158; *Dollar Savings Bk.* v. *U. S.,* 19 Wall. 227; *U. S.* v. *Lyman,* 1 Mason, 482; *Meredith* v. *U. S.,* 13 Peters, 486; *Cornwall* v. *Todd,* 38 Conn. 443; *Hubbard* v. *Brainard,* 35 id. 563.) Interest should be allowed upon taxes *in personam* such as the one in question. (*People* v. *County of New York,* 5 Cow. 331; *People, ex rel. Bk. of Monroe,* v. *Canal Commissioners,* 5 Den. 401; *Philadelphia* v. *Gray's Ferry Passenger R. R. Co.,* 52 Penn. St. 177; *City of Dubuque* v. *Illinois Central R. R. Co.,* 39 Iowa, 56.)

DANFORTH, J. The complaint alleges that the defendant is a corporation organized under the laws of this State, and as such liable to be taxed on its corporate franchise or business, under the provisions of chapter 361, Session Laws of 1881, which provides for raising taxes for the use of the State "upon certain corporations, joint-stock companies and associations;" that its treasurer reported to the comptroller the amount of capital as $5,000,000, and dividends made or declared thereon during the year ending November 1, 1882, amounting to six per cent upon the par value of such capital stock; that there was imposed upon the defendant a tax which, estimated at the statutory rate, amounted to $7,500; that it became due within fifteen days from the 1st of January, 1883, but has not been paid. Judgment therefor was demanded for the above sum, with interest, and by way of penalty an addition of ten per centum.

The defendant answered, admitting the material allegations of the complaint, but sought to avoid the plaintiff's claim by setting up the act of 1853 (Chap. 471), and saying that it " has ever since its organization owned and used a line of electric telegraph partly within and partly beyond the limits of this State, and that it has for many years past, and up to the present time rendered its report to the proper officer, as required by said law of 1853, and paid its taxes to the amount required by said last-mentioned law; that it is subject to taxation under the provisions of the law of 1881, mentioned in said complaint only

upon an amount of its stock or the dividends thereon equal to the cost to the defendant of its work within this State, which cost was the sum of $146,371.22." At the trial the defendant's counsel moved to dismiss the complaint, on the ground that the act (Chapter 361 of the Laws of 1881), so far as it attempted to impose a tax upon the corporations referred to in the third section thereof, was in violation of the Constitution of the United States, and especially of that part thereof commonly known as the fourteenth amendment to said Constitution. This motion was denied.

The defendant then offered to prove the facts stated in its answer, but the court ruled that if proven they constituted no defense, and rejected the offer. It then asked the court to direct the jury that their verdict should not include any sum for interest, on the ground that the penalty of ten per cent, given by the statute as damages, was a substitute for interest. The court declined to do so, and a verdict under its direction was rendered for the plaintiffs for the sum of $8,250, the amount of tax and penalty, and $337.50 interest, amounting in all to the sum of $8,587.50. Judgment upon the verdict was affirmed at General Term, and this appeal is from the judgment of affirmance.

Exceptions duly taken to these rulings of the court indicate the questions presented to us. They all, except the first, depend upon the true construction of the statutes above referred to, viz.: the act of 1853 (Chap. 471), and that of 1881 (Chap. 361).

The first question has already been answered adversely to the defendant's contention (*People* v. *Home Ins. Co.*, 92 N. Y. 328; *People* v. *Equitable Trust Co. of New London*, 96 id. 387), and in this court it must be deemed settled that the statute of 1881 does not violate any provision of the Constitution of the United States. The argument of the learned counsel for the appellant has been mainly placed upon the act of 1853. He concedes, as does the answer, that the act of 1881 applies to telegraph companies, but also contends that as to them it is subject to the limitation prescribed by the former act. The purpose of that act (Laws of 1853, chap. 471, p. 931), as declared

in its title, is to amend "an act to provide for the incorporation and regulation of telegraph companies," passed April 12, 1848. Its first section permits the formation of such companies for the purpose of constructing or owning lines of telegraph, whether wholly within or partly beyond the limits of this State. Its second invests them with authority to erect and construct the necessary fixtures for such lines of telegraph over roads and highways, or waters within the limits of the State. Its third section enacts that "Every such company owning or using a line of electric telegraph, partly within and partly beyond the limits of this State, shall render to the proper officer a true report of the cost to such company of their works within this State; and the stock of such company in amount equal to such cost, or the dividends thereof, shall be subject to taxation in the same manner, and at the same rate, as the stock or dividends of other companies incorporated by the laws of this State are subject," and is the one relied upon by the appellant as restricting the force and operation of the act of 1881. It is plain the legislature, in passing the act of 1853, had in contemplation not only a company whose line should be wholly within this State, but one whose line should be partly in this and partly in another State, and intended in either case to subject each to the same measure of taxation, viz. : the cost of their works within the State, and however large its capital might be, and however extensive its line, its stock for that purpose should be deemed to be a sum equal to the cost to the company of its works within the State. The taxation imposed is upon so much of the described property of each company as is within this State, in this respect therefore conforming to the general policy enforced by the Revised Statutes (1 R. S. 387, § 1), by which "all lands and all personal estate within this State, whether owned by individuals or corporations," were declared liable to taxation, with certain exceptions not now important. As to the manner of taxation, and its rate, the act is silent, save by reference to laws to which other companies are subject. It would seem then that the object of the act, so far as the question before us is concerned, was to fix a peculiar and special

basis of taxation as to telegraph companies, but, in other respects mentioned, place them in the same position as other corporations. To do this, however, was not the main object of the act, but incidental to that declared by its title.

With the act of 1881 (*supra*) it is quite otherwise. It deals, as its title declares, with the subject of taxation of corporations and no other matter. It is "An act to provide for raising taxes for the use of the State upon certain corporations, joint-stock companies and associations." What these terms include is declared by section 3 in language so comprehensive and clear as to leave little room for interpretation. It reads as follows : "Every corporation, joint-stock company or association whatever, now or hereafter incorporated or organized under any law of this State, or now or hereafter incorporated or organized by or under the laws of any other State or country, and doing business in this State, except savings banks," and some other institutions, corporations and companies, among which "telegraph companies" are not named, "shall be subject to and pay a tax, as a tax upon its corporate franchise or business, into the treasury of the State annually, to be computed as follows: If the dividend or dividends made or declared by such corporation, joint-stock company or association, during any year ending with the first day of November, amount to six or more than six per centum upon the par value of its capital stock, then the tax to be at the rate of one-quarter mill upon the capital stock for each one per centum of dividend so made or declared ; or if no dividend be made or declared, or if the dividend or dividends made or declared do not amount to six per centum upon the par value of said capital stock, then the tax to be at the rate of one and one-half mills upon each dollar of a valuation of the said capital stock made in accordance with the provisions of the first section of this act," and other provisions intended to meet cases not before provided for. Section 1 requires a report from each of these organizations, and section 4 requires the amount estimated under the provisions of the act to be transmitted to the treasury of the State within fifteen days after the first day of January in each year. Notwithstanding the ex-

plicit language of these sections, the extended and very in-
genious argument of the learned counsel for the appellant rests
upon the contention that the limitation permitted by the act of
1853, by which, for the purpose of taxation, the capital stock
of a telegraph company is the cost of its works within this
State, so restrains and governs the act of 1881 that the words
"capital stock" as there used shall be construed as if they carried
with them the same words of qualification.    And this presents
the only important question in the case.

Undoubtedly the section (3) referred to relates to a special
matter and to the special class of corporations to which the
defendant belongs, and the argument for the appellant is put
upon a series of authorities — text writers and the decisions of
courts, which determine that an act directed toward a special
object, or a particular class of persons, will not be repealed by
a subsequent act embracing in general terms these particular
objects or persons, unless some reference be made directly or
by necessary inference to the special act.    This rule, how-
ever, is only one of many by which courts seek the intent of
the legislature, which it is said they have always taken "ac-
cording to the necessity of the matter, and according to that
which is consonant to reason and good discretion." (*Stradling*
v. *Morgan*, 1 Plowden, 199, 204.)    I should, therefore, be pre-
pared to agree with the appellant that the act of 1881 did not
repeal the provision of 1853 in the respect referred to, if I did
not find in the later act both affirmative and negative provisions
so in conflict with those of the former special act, that the leg-
islature could not have intended the two should stand together.
We find in section 6 of the act of 1881 (*supra*) telegraph com-
panies named with railroad and other corporations, and con-
cerning them an enactment that, "in addition" to the taxes
above provided for, they shall pay "as a tax upon corporate
franchise or business" at the rate of five-tenths of one per
cent upon gross earnings for telegraph business "transacted in
this State."    Thus every six per cent dividend-paying corpora-
tion (not excepted in terms) is subject to a tax "upon its cor-
porate franchise or business," limited only by relation to the

amount of its capital stock, and "every telegraph company," though merely incorporated and whether dividend-paying or not, is subject to another tax upon its "corporate franchise or business," estimated upon its gross earnings within the State.

It would greatly diminish the scope of the provisions by which the first is imposed, and defeat the apparent intent of the legislature, for a court to say that a corporation which within the letter of the law owed a tax to the State upon $5,000,000 of capital, *eo nomine*, could be discharged upon payment of a tax estimated on a certain proportion only of the cost of its works. Nor could it be said, without disregarding the rule which in the construction of a statute requires the differing language of the legislature to be observed. In the first case the entire· capital, whether expended within or without the State, is made the basis of taxation, and in the second such earnings only as are made within the State. And in view of the express language of the statute, to make the implication required by the appellant would amount to an act of judicial legislation, and sanction the omission of a duty imposed in terms upon every corporation, whenever or howsoever organized. It would relieve one from a liability to which all are declared subject, and introduce confusion into a scheme which was intended to be equal and harmonious. We find no reason in the nature of things, nor authority for doing it. The act of 1881 was not in furtherance of an existing system, but introduced a new method of regulating the amount of corporate contribution to the payment of State expenses, by assessments, not upon property, but upon privilege and business. To that end the scheme is a complete and independent one. It is made just and perfect in this respect by declaring (§ 8) that the corporations, joint-stock companies and associations mentioned in it as taxable *shall thereafter be exempt from assessment and taxation for State purposes*, except upon their real estate, and as therein provided ; but shall in other respects be liable to assessment and taxation as theretofore.

So far, therefore, as those purposes are provided for by the act of 1853 (§ 3, *supra*), the latter is, by necessary implication,

repealed.   The legislature must no doubt be presumed to have known of the existence of the earlier statute, and its repeal might have been the subject of express enactment, but in the respect named the two acts are so repugnant that they cannot stand together.   In the one, taxation upon property, in the other, taxation upon franchise and business; in the one the thing taxed estimated by the actual cost of works upon which capital has been expended, in the other estimated by the amount of capital itself, with an exemption from other assessment or taxation except as therein provided.   The whole law indeed is not repealed, but so much only as relates to these purposes. In other words, the effect of the act of 1881 is to take taxation for State purposes out of the operation of the act of 1853.   The same result is reached under a rule now well settled by which a later statute covering the same subject-matter and embracing new provisions operates to repeal a former act, even if the two are not in express terms repugnant.   (*Heckmann* v. *Pinkney*, 81 N. Y. 211.)

We have not overlooked the various cases and citations brought together by the learned counsel for the appellant, but find none which permits us to imply words into a statute whose meaning is already plain.   The argument if yielded to would require an alteration of the statute, rather than a difference of construction.   In other respects also the two statutes are so entirely inconsistent that they cannot be enforced together. By that of 1853 the defendant would fail in its duty if it did not report to the assessors, by that of 1881 if it did not report to the comptroller.   By the law of 1853 and the acts there referred to, payment is to be made to the collector; by that of 1881, to the treasury of the State ; by that of 1853, the corporation would be subject on default to general penalties imposed; by that of 1881, to a forfeiture of its charter and privileges ; and finally by the law of 1853, it would be liable to taxation upon a portion of its property, while. by that of 1881, it is expressly exempt from all taxation for State purposes, except upon its real estate and as provided by that act.   It should be observed also that at the same session (Laws of 1881, chap. 597), the legislature

provided a new manner of assessing certain real estate of the several telegraph companies within the State, by requiring each company to return to the comptroller of the State and the treasurer of each county in which any portion of its lines is located, a statement under the oath of one of its officers show- ing the total length of such lines within each county, with the cost of construction, including all equipments, and making it the duty of the county treasurer to transmit a copy to all town and city clerks, and of the assessors in each assessment district, to insert in the assessment books for the purposes of taxation, as the value of such property within said district such propor- tion of the cost of construction, as the length of the lines of each company within such district bore to the aggregate length of all the lines of such company within the county. It is apparent from these two acts (Chap. 361 and chap. 597) that the legislature had in contemplation as concerning these companies, their property in all its various forms and the manner and ex- tent of its taxation. The whole became the subject of legisla- tion. A new plan of taxation was designed and different methods and legal machinery were prescribed for effecting it. In view, therefore, of the plain and precise language of the statute, we think it was the intention of the legislature to do away with all special provisions and establish one uniform system of taxation upon corporations for State purposes, as prescribed in the act of 1881. It seems susceptible of no other construction. We have no difficulty, therefore, in concurring with the court below in the conclusion that the provisions of the act of 1853 can in no manner affect the act of 1881, and that the defendant is liable according to its terms.

But upon the last point raised by the defendant we think the appeal should succeed. The State at its pleasure created the charge or tax, and prescribed the penalty for default in payment. No other can be collected. In this case the comp- troller is directed to add "ten per centum to the tax of said corporation or company   *   *   *   for each and every year for which such tax shall not have been paid " (§ 2), and by sec- tion nine an action is given to the people for the tax imposed.

Interest is not given either by this act or by any general law of the State. The payment of it cannot be imposed by implication. What the State omitted to demand, the court cannot require. But the legislature has not overlooked in this respect any property right of the State. Where interest is given, it is as damages or compensation for delay in payment. The creditor is supposed to have lost something and to require indemnity. Here the legislature has ordained it. Ten per cent. annually is to be added. Whether it lay in the mind of the legislature that this was interest or not, we do not know. It is what is given; and that it is given, and nothing more, excludes any plausible contention that the tax payer is liable beyond it. So far, therefore, as the judgment allows interest, it should be modified, and as modified, affirmed, without costs.

All concur, except RUGER, Ch. J., not sitting.

Judgment accordingly.

A motion was subsequently made, based upon the act (Chap. 151, Laws of 1882), for a reargument, or for an amendment of the remittitur so that the judgment should be without prejudice to any application on the part of defendant to the Supreme Court for leave to apply to the comptroller for relief under said act.

The following mem. was handed down:

DANFORTH, J. The act to which we are now referred (Laws of 1882, chap. 151) seems to have no relation to any issue in this action, and neither its existence nor the practice of the comptroller under it could affect the determination of the case. Whether through its provisions and without litigation a way is open to a corporation situated as is the one before us to have the basis for taxation fixed at a point below its capital, we do not inquire. For certain purposes the comptroller's estimate is conclusive, unless appeal is taken to the tribunal created by the act, and that appeal stays no proceeding until the sum fixed by him, whether taxes, penalties, or interest, is actually deposited with the treasurer. Moreover, the decision of the

appellate board is final. It would, therefore, be unreasonable to withhold from the State the judgment to which, as the case now stands, it is entitled in order that its adversary may go before a body whose decision, if first obtained, would have made the present action impossible. It may well be, as the learned counsel for the defendant urges, that the act of 1882 (Chap. 151) calls for "an immediate judicial definition," but it is not before us as a statute bearing upon the present controversy. It is inconsistent with it, and we cannot anticipate questions which by possibility may arise in proceedings against other parties.

The motion should, therefore, be denied.

All concur.

Motion denied.