## OBADIAH C. BOGARDUS

*v.*

## MARGARET J. GORDON et al.

In case, after a general act upon the subject of usury, an act is passed imposing a different penalty for a single county, and still later the general act is amended, in which no reference whatever is made to the special or local act, the latter being radically inconsistent with the special or local act and by negative terms covering the whole of the subject-matter, operates as a repeal of such special or local act.

Bogardus *v.* Gordon.

On motion under Rule 213.

*Mr. William H. Vredenburgh,* for the complainant.

*Mr. William Hyres,* for the defendants.

Bird, V. C.

This bill was filed for the foreclosure of a mortgage. The contracting parties reside in the county of Monmouth, and the lands embraced in the mortgage lie in that county. The mortgagor answers and claims the benefit of the act of the legislature approved March 10th, 1875, which is in these words:

"That all contracts for the loan of money, wares, merchandise, goods or chattels hereafter made in the county of Monmouth, in this state, whereby above the value of seven dollars for the forbearance of one hundred dollars for a year or above that rate for a greater or less sum, or for a longer or shorter period, shall be taken directly or indirectly, shall be utterly void. That all acts and parts of acts inconsistent with this act be and the same are hereby repealed."

The complainant moves to strike out of the answer so much of it as claims any protection or relief under the act just quoted. In support of his motion, he insists that the provisions of the act approved March 27th, 1874, as amended by the act approved February 26th, 1878, operate as a repeal of the act of March 10th, 1875.

The act of March 27th, 1874, is in these words:

"That no person or corporation shall, upon any contract, take, directly or indirectly, for loan of any money, wares, merchandise, goods or chattels, above the value of seven dollars for the forbearance of one hundred dollars for a year, and after that rate for a greater or less sum, or for a greater or shorter time."

The second section makes this provision:

"That in all cases of suits, either at law or in equity, to enforce any note &c. on which a higher rate of interest shall be reserved or taken than was or is allowed by the law of the place where the contract was made or is to be performed, the amount or value actually lent, without interest or costs of suit, may be recovered, and no more; and if any premium or illegal interest shall have been paid to the lender, the sum or sums so paid shall be deducted from the amount that may be due as aforesaid, and recovery had for the balance only."

The act which was approved February 26th, 1878, is in these words:

"That the first section of the act to which this is a supplement, and which reads as follows [which is the first provision copied above], be and the same is hereby amended so as to read as follows: 'that no person or corporation shall upon contract, take, directly or indirectly, for loan of any money, wares, merchandise, goods or chattels, above the value of six dollars for the forbearance of one hundred dollars for a year, and after that rate for a greater or less sum, or for longer or shorter time.'"

The next section declares:

"That so much of the first section of the act to which this is a supplement, as is inconsistent with this supplement, be and the same is hereby repealed."

In the last act no reference is made to the act of March 10th, 1875.

It will be perceived that the act of March 10th, 1875, declares that every such contract shall be void. This act is what is called "local," or special in its nature, being applicable only to a single county. The act of February 26th, 1878, is general, as distinguished from special. The claim that the act of 1878 works a repeal of the act of 1875 is resisted upon the familiar principle that general laws do not, by implication, abrogate special laws.

The general rule is, "that a general statute, without negative words, will not repeal the particular provisions of a former one unless the two acts are irreconcilably inconsistent." *Sedgw. Stat. & Const. L. 97; Craft* v. *Jachetti, 18 Vr. 205; State, Morris and Essex Railroad Co.* v. *Commissioners of Railroad Taxation, 8 Vr. 228; School District* v. *Whitehead, 2 Beas. 290; Henderson's Tobacco, 11 Wall. 652; Rogers* v. *Watrous, 8 Tex. 62; United States* v. *Tynen, 11 Wall. 92; People* v. *Gold and Stock Telegraph Co., 98 N. Y. 67; Bowen* v. *Lease, 5 Hill 221.*

Or unless it was clearly intended to prescribe the only rule that should govern in the case, then it will repeal the original act. *School District* v. *Whitehead, supra; State, Morris and Essex Railroad Co.* v. *Commissioners of Taxation, supra; Rogers*

Bogardus v. Gordon.

v. *Watrous, supra; Daviess* v. *Fairbairn, 3 How. (U. S.) 635, 636; State* v. *Stoll, 17 Wall. 431; United States* v. *Tynen, supra; Davis* v. *State, 7 Md. 151; Towle* v. *Marrett, 3 Greenl. 22; Edgar* v. *Greer, 8 Iowa 394; Britton* v. *Commonwealth, 1 Cush. 302.*

Or unless it embraces the whole subject-matter. *Dugan* v. *Gittings, 3 Gill 138; Bartlett* v. *King, 12 Mass. 536; Heckmann* v. *Pinkney, 81 N. Y. 211; United States* v. *Claflin, 7 Otto 546; Bowen* v. *Lease, supra; Britton* v. *Commonwealth, supra.*

The act of 1876 is without the slightest qualification, and therefore general. It cannot be questioned but that it embraces every county in the state as fully as the act of 1874. The act of 1875, by its express provisions, excepts the county of Monmouth from the operation of the act of 1874, and increased the penalty to the forfeiture of the entire sum loaned.

The undisputed facts just adverted to show that the act of 1878 cannot be reconciled with the act of 1875. There are no exceptions in the former. This unqualified language of the law-making power proves conclusively that it intended to prescribe the only rule that should govern. Nor does it require any argument to make it manifest that the later act embraces the whole subject-matter as well as all the territory within the borders of the state.

The case more like this than any other is that of *People* v. *Jaehne, 103 N. Y. 182.* In this case an act, which was called the Consolidation act, prescribed certain penalties for crimes for the city of New York. The penal code prescribed other and greater penalties for the same crimes. The Consolidation act was approved subsequent to the penal code, but there was a provision that, notwithstanding the latter was prior in point of time, it should take effect at a given date after the enactment of the Consolidation act. There was no provision in the penal code expressly repealing the Consolidation act. Jaehne was indicted in the city of New York, for bribery. There were two counts in the indictment, one charging him under the Consolidation act and the other under the code. Upon motion requiring the prosecuting attorney to elect under which count he would

Bogardus *v.* Gordon.

proceed, he elected to proceed upon the indictment under the code. The question then was, which of the two acts was in force in the city of New York? In other words, whether the enactment of the code abrogated the Consolidation act with respect to the penalties imposed?

The court said : " We are therefore brought directly to the main question, whether section 58 of the Consolidation act is in force, and takes the case of bribery, when committed by a member of the common council of the city of New York, out of the operation of section 72 of the penal code, thereby requiring a different procedure and a different punishment in the special case from that prescribed by the general law governing the same offence when committed by a member of the common council in other cities of the state. * * * The penal code contains no general clause repealing prior statutes covering the subject embraced in its provisions. It, however, defines and prescribes the punishment for murder, larceny, burglary and all the generally-recognized offences, and it cannot be doubted that its provisions on these subjects were intended for a substitute for similar provisions in the prior laws. * * * The learned counsel for the defendant insist that the two acts are not necessarily repugnant, and they invoke the application to this case of the general rule in respect to the repeal of statutes by implication, that a posterior general act does not repeal a prior local act unless the legislative intent to repeal be unequivocally apparent. Whether the subsequent statute repeals the prior one, in the absence of express words, depends upon the intention of the legislature ; and one of the tests frequently resorted to, to ascertain whether there is a repeal by implication, is to inquire whether the special and general acts may both be executed without involving repugnancy of rights or remedies. In some cases the question has been solved by holding that the general act was intended to declare a general rule covering cases not already provided for, and that a prior special statute on the same subject operating upon a single person or class of persons, or within a limited territory, should be treated as if specially excepted from the operation of the general law. It will be found, I think, on

examining the cases in which the courts have held that a special law was not repealed by a subsequent general law on the same subject, that they are, as a general rule, cases where the legislature was not dealing directly with the subject of the prior law, and it was not in the mind of the legislature, when the general law was enacted, or where a special law was part of a system of local administration, but where it was possible to assign a reasonable motive for retaining the special and peculiar provisions of the special act, notwithstanding the enactment of a subsequent general rule covering the same subject. The General Bribery act not only covers the whole subject, but was, we think, plainly intended to furnish the only rule covering the crime and punishment of bribery." After saying that no public policy requires any discrimination between the punishment for bribery in different localities, the court declares : "A later statute, covering the same subject-matter and embracing new provisions, operates to repeal the prior act, although the two acts are not, in express terms, repugnant. See *Morris* v. *Croker, 13 How. 429 ; Bartlett* v. *King, 12 Mass. 545 ; United States* v. *Tynen, 11 Wall. 88 ; Heckmann* v. *Pinkney, 31 N. Y. 215 ; People* v. *Gold and Stock Telegraph Co., 98 N. Y. 78.*"

In commenting upon legislation which imposes different penalties in different districts for the same offence, the court said : "Such legislation is absurd in theory and leads to injustice. It regulates punishment according to the locality of the crime, instead of by the nature of the offence. It is repugnant to the principle that laws should be equal and impartial, and ignores a natural sentiment which requires even-handed justice, even in the punishment of crimes. * * * It is the duty of courts, in construing statutes, to avoid, if possible, a construction which leads to absurdity or manifest injustice. * * * The fact that, prior to the penal code, the same inconsistency existed between the punishment for bribery under the charter provisions and the General Bribery statute, does not, we think, make it less the duty of the court to seek to place such a construction upon a penal code as will remedy such an anomalous and unsatisfactory condition of the law."

The result of my investigation is that the negative words, "that no person or corporation shall upon contract take, directly or indirectly, for loan of any money" &c., in the act of 1878, include the county of Monmouth, as well as every other county in the state, and necessarily repeal the act of 1875. This being so, the bonus which it is alleged was paid for the loan, if established, must be accounted for under the act of 1878.

The motion to strike out must prevail, with costs.