THOMAS W. STACK, Appellant, *v.* THE CITY OF BROOKLYN, Respondent.

1. PAY OF POLICEMEN IN CITIES — LAWS OF 1884, CHAP. 182 — APPLICATION DEPENDENT ON POPULATION.   Chapter 182, Laws of 1884, which provides that on and after the 1st day of January, 1885, the grade and compensation of members of the police force in all cities of the state, "having, according to the last census, a population exceeding eight hundred thousand," shall be as prescribed therein, was intended to apply only to cities which had the required population at the time when the act was passed and took effect, as shown by the then last census, and was not intended to apply to any city in the state at any future time when, by a census, it was found to have that population.

2. CITY OF BROOKLYN — PAY OF POLICEMEN REGULATED BY LAWS OF 1888, CHAP. 583.   Even if chapter 182, Laws of 1884, was ever applicable to cities acquiring a population of 800,000 subsequently to its passage, as did the city of Brooklyn, that city has been excepted from its operation by force of subsequent repugnant legislation, covering and controlling the entire subject of the compensation of the police in the city of Brooklyn, and embodied in its charter by chapter 583, Laws of 1888.

*Stack* v. *City of Brooklyn*, 9 Misc. Rep. 260, affirmed.

(Argued June 17, 1896; decided October 13, 1896.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made June 25, 1894, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term dismissing the complaint upon the merits.

This action was brought by a member of the police force of the city of Brooklyn to recover the difference between the amount of salary actually received by him and the amount claimed to be due him under the provisions of chapter 182, Laws of 1884.

On the first day of January, 1890, the plaintiff was appointed patrolman upon the police force of the city of Brooklyn, and has held that position continuously since.   On the twenty-second of April, 1884, an act was passed which was as follows: " Section 1. On and after the first day of January, eighteen hundred and eighty-five, the grade and the

pay or compensation of members of the police force who are
patrolmen in all cities of this state, having, according to the
last census, a population exceeding eight hundred thousand,
shall be as follows: All such members who are patrolmen on
said first day of January, eighteen hundred and eighty-five,
and who shall have served three years or upwards on said
force, shall be members of the first grade; all such members
who have served on such force for less than three years, and
more than one year, shall be members of the second grade;
and all other members who are patrolmen then on said force
shall be members of the third grade; and all persons appointed
patrolmen after the said first day of January, eighteen hun-
dred and eighty-five, shall on their appointment become mem-
bers of the third grade. Whenever any member of the third
grade shall have done service therein for one year, he shall
be advanced to the second grade, and whenever any member
of the second grade shall have done service therein for one
year he shall be advanced to the first grade, but no such
patrolman shall be so advanced as aforesaid except after
examination by, and approval of, the board of police or police
commissioners of such city of his record, efficiency and con-
duct. The annual pay or compensation of the members of
the police force who are patrolmen as aforesaid, shall be as
follows: For members of the first grade at the rate of twelve
hundred dollars each, for members of the second grade at the
rate of eleven hundred dollars each, for members of the third
grade at the rate of one thousand dollars each. The pay or
compensation aforesaid shall be paid monthly to each person
entitled thereto, subject to such deductions for or on account
of lost or sick time, sickness, disability, absence, fines or for-
feitures as the board of police may, by rules and regulations,
from time to time prescribe or adopt."

At the time of the passage of that act, the city of Brooklyn
had by the last census less than eight hundred thousand
inhabitants. By the Federal census, taken about the first of
July, 1890, it appeared that it was then a city having a popu-
lation exceeding that number.

In 1888, by chapter 583 of the laws of that year, all the
then existing special and local laws affecting public interests in
the city of Brooklyn, were revised and combined in that act.
Section five of title eleven was as follows :  " § 5.  The grade
of the members of the police force who are patrolmen shall be
as follows :  All such members who shall have served three
years or upwards on said force as patrolmen shall be members.
of the first grade ; all such members who have served on such
force for less than three years and more than one year shall
be members of the second grade ; and all other members who
are patrolmen on said force shall be members of the third
grade ; and all persons appointed patrolmen shall, on their
appointment, become members of the third grade.  When-
ever any member of the third grade shall have done service.
therein for one year he shall be advanced to the second
grade ; and whenever any member of the second grade shall
have done service therein for one year he shall be advanced to
the first grade.  The annual pay or compensation of the mem-
bers of the police force shall be fixed by a majority of all the
members of the board of estimate of the city of Brooklyn, and
shall not be less than the salaries now paid to said patrolmen
and doormen, nor greater than the following, namely : For
patrolmen of the first grade at a rate not to exceed twelve
hundred dollars per annum each ; for patrolmen of the second
grade at a rate not to exceed eleven hundred dollars per
annum each ; for patrolmen of the third grade at a rate not to
exceed one thousand dollars per annum each ; for members.
of the police force who are doormen at a rate not to exceed
nine hundred dollars per annum each.  The pay or compen-
sation aforesaid shall be paid monthly to each person entitled
thereto, subject to such deductions each month from the
salary, compensation and pay of members of the force as are
or shall be authorized by law."

It was under the provisions of the latter act that the appel-
lant was appointed.  In pursuance of it the salary of patrolmen
had been fixed by the board of estimate as follows : Patrol-

43

men of first grade eleven hundred dollars per annum ; of the second grade nine hundred dollars, and of the third grade eight hundred dollars.

The appellant claims that on the first day of July, 1890, the city of Brooklyn fell within and was controlled by the provisions of the act of 1884, and from that date he was entitled to a salary at the rate of one thousand dollars per annum while a member of the third grade, eleven hundred dollars while a member of the second grade, and twelve hundred dollars while a member of the first grade. From the sixth of January, 1890, to the sixth day of January, 1891, the plaintiff was a member of the third grade ; from the sixth of January, 1891, to the sixth of January, 1892, of the second grade, and from the sixth day of January, 1892, until the time of the trial of the action, a member of the first grade.

The plaintiff was paid by the city at the rate established by the board of estimate under the Laws of 1888, and this action was brought to recover the difference between the amount of the salary which would have been payable under the provisions of the statute of 1884, and that established by the board of estimate as provided by the statute of 1888. The trial court held that the salary of the plaintiff was regulated by the provisions of the Laws of 1888, and not controlled by the statute of 1884.

*William P. Pickett* for appellant. The words " last census " in the statute (Chap. 182, Laws of 1884) refer to the census last taken when this action was begun and the provisions of the law invoked. ( *Weed* v. *Tucker*, 19 N. Y. 422; *D. R. P. Co.* v. *Mayor, etc.*, 52 Hun, 542; *People ex rel.* v. *Potter*, 47 N. Y. 375; Dillon on Mun. Corp. §§ 58, 60, 61, 62, 210, 975; *People ex rel.* v. *Draper*, 15 N. Y. 532; *People* v. *Shepard*, 36 N. Y. 285; *People ex rel.* v. *Albertson*, 55 N. Y. 50; Laws of 1882, chap. 410; Laws of 1884, chap. 180.) The city of Brooklyn was on the 12th day of September, 1892, the date of the service of the summons, a city of the state of New York, having, according to the last census, a popula-

tion exceeding 800,000 and, therefore, plaintiff is entitled to judgment. (Greenl. on Ev. §§ 5, 6; *People ex rel.* v. *Rice,* 135 N. Y. 436; Endlich on Interp. Stat. §§ 264, 318; *Tilden* v. *Green,* 130 N. Y. 29, 52; *Lyde* v. *Barnard,* 1 M. & W. 101; *Matthews* v. *Commonwealth,* 18 Grat. 989; *Waters* v. *Campbell,* 4 Saw. 121; *People* v. *Gates,* 56 N. Y. 387; Laws of 1893, chaps. 129, 130, 314, 337, 391, 408, 434; Laws of 1894, chap. 115; Laws of 1883, chap. 354, § 8; *People ex rel.* v. *Davenport,* 91 N. Y. 574; Potter's Dwarris on Stat. 121–146; Laws of 1892, chap. 677; *In re N. Y. E. R. R. Co.,* 70 N. Y. 327, 350; *McKenna* v. *Edmundstone,* 91 N. Y. 231; *In re Evergreens,* 47 N. Y. 216.) Where an act provides for a classification of cities upon a basis of population, or upon any other basis, other cities in the future as they may be formed, or found to come within the fundamental condition of the act, are subject to and governed by its provisions. (*Wheeler* v. *Philadelphia,* 77 Penn. St. 338; *Kilgore* v. *Magee,* 85 Penn. St. 14; *In re Church,* 92 N. Y. 1; *People ex rel.* v. *Squire,* 107 N. Y. 593; *Matter of Dobson,* 146 N. Y. 357; *People ex rel.* v. *Roberts,* 148 N. Y. 360; *In re N. Y. E. R. R. Co.,* 70 N. Y. 351; *H. R. T. Co.* v. *W. T. & R. Co.,* 135 N. Y. 393; *People ex rel.* v. *U. Ins. Co.,* 15 Johns. 358; *People ex rel.* v. *Lacombe,* 99 N. Y. 49.) The city of Brooklyn is not excepted by more recent legislation from the operation of chapter 182 of the Laws of 1884. (1 Dill. on Mun. Corp. § 88; *State* v. *Young,* 17 Kans. 414; *State ex rel.* v. *Douglas,* 33 N. J. L. 363; *M. H. P. Co.'s Appeal,* 99 Penn. St. 513; *I. & S. L. R. R. Co.* v. *Blackman,* 63 Ill. 117; Endlich on Interp. of Stat. chap. 8, § 210; Const. art. 3, § 16; Cooley on Const. Lim. [6th ed.] 177.)

*Joseph A. Burr* for respondent. The city of Brooklyn never was included in the provisions of the Laws of 1884 (Chap. 182), nor is that law applicable to any member of the police force in said city, either as to grade or amount of compensation. (Laws of 1892, chap. 672, § 10; Const. art. 12, § 2; Laws of 1884, chap. 344; Const. of U. S. art. 1, § 3;

*Matter of Dobson*, 146 N. Y. 360.) The grade and salaries of patrolmen of the police force of the city of Brooklyn are regulated by the provisions of the charter (Laws of 1888, chap. 583), and not by the provisions of the act in question. (*Meehan* v. *City of Brooklyn*, 37 N. Y. S. R. 398.) Even if it could be contended that the provisions of the law of 1884 were sufficient to include the city of Brooklyn after the 1st day of July, 1890, it is well settled that in a conflict between the provisions of a general law and those of a special and local law, the latter, if subsequent in point of time, will be deemed a repeal of the former, and where there is an inconsistency between the two, the provisions of the special and local law will prevail in the absence of a clear legislative intent to effect its repeal. (*McKenna* v. *Edmundstone*, 91 N. Y. 231; *Whipple* v. *Christian*, 80 N. Y. 523; *Van Denburgh* v. *Vil. of Greenbush*, 66 N. Y. 1; *People* v. *Quigg*, 59 N. Y. 88.)

MARTIN, J. The appellant presents two questions for consideration and determination by this court: 1. Whether the act of 1884 was intended to apply only to cities having a population of eight hundred thousand by the last census which had been taken previous to its passage, or whether it was intended to apply to any city in the state at any future time when, by a census, it was found to have that number of inhabitants; and, 2. If it be held to apply to a city subsequently acquiring a population of eight hundred thousand, whether the city of Brooklyn has, by subsequent legislation, been excepted from the operation of the act of 1884.

First, in determining the question whether the act of 1884 was intended to apply only to cities having the population mentioned, as indicated by the last census previous to the time of its passage, or whether it was intended to be continuous and to apply to all cities when, by any previous census, they should be found to possess the required number of inhabitants, it is proper to examine the language of the act itself, and thus determine its purpose if it may be done. The act in effect provides that on and after January, 1885, the grade and com-

pensation of members of the police force in cities having, according to the last census, eight hundred thousand, shall be as prescribed in that act. It is to be observed that the language of this portion of the statute is that all cities having, according to the last census, the population mentioned shall be governed by its provisions. The word "having" is the present participle of the verb "have," and, hence, must be read as though the language had been, on and after January, 1885, the compensation of the police force of any city of this state that now has, according to the last census, the population named shall be as stated therein. This statute speaks as of the time when it was passed or went into effect. Its provisions are not ambiguous, but clearly express the idea that cities which should have the required population at the time mentioned should be controlled by the provisions of that act. Nor do we find anything in its subsequent provisions which indicates any other intention. The subsequent provisions seem rather to confirm the idea that it was intended to apply only to cities having the required population at the time the act became a law. The provision immediately following that referred to is to the effect, that all members who are patrolmen January 1st, 1885, and who shall have served three years or upwards, shall be members of the first grade; that those who have served less than three years and more than one, members of the second grade, and all others who were patrolmen *then* or appointed after that time, should become members of the third grade.

Thus it seems that, by the provisions of that act, the classification of patrolmen was to be based upon their term of service as it existed January 1st, 1885, and that it relates chiefly to patrolmen who were *then* in the service of the city. The only provision for patrolmen not then on the force is the provision that they shall, on their appointment, become members of the third grade. This provision is consistent with the idea that the statute was to apply only to cities of the class named which existed at that time, and inconsistent with any other. If the contrary construction were to obtain, so that whenever

a city attained the population mentioned it would fall within the provisions of this statute, the result might be that at that time there would be no patrolmen in the service of the city who were such in 1885, and, consequently, there could be none in any grade except the third, although there might be on the force many who had served for several years. The spirit and purpose of the statute was to reward a patrolman who had served upon the force by an increase of his pay according to his grade, which depended upon the years of his service. If the statute bears the construction contended for by the appellant, a patrolman who had served for years must necessarily be reduced to the same grade and pay as one appointed at the time. Such could not have been the purpose of the statute.

A careful study of the provisions of this statute, giving to the language employed its usual meaning and effect, renders it obvious that the intent of the legislature was that it should apply only to cities which had a population exceeding eight hundred thousand at the time when the act took effect, as shown by the then last census.

The appellant's contention that the words of the statute, which are in the present tense, should be held to include the future by virtue of the provisions of section eight of the Statutory Construction Law, cannot be sustained. That provision is applicable only when the context of a statute, or other provisions of law do not indicate that a different meaning or application was intended. (§ 1.) In this case the context clearly indicates that it was to apply to cities then having the required population according to the last census.

The appellant also persistently urges as a reason for a different construction that, as the city of New York was the only city in the state which at that time had the required population, and as the legislature passed chapter 180 of the Laws of 1884 on the day previous to the passage of this act, and as that act was in all essential particulars like the act under consideration, so that the latter never had or could have had any effect or operation whatever unless applied to other cities,

those facts are potent evidence that the intent of the legislature was that the act under consideration should apply solely to cities which should afterwards attain the required population. If the appellant's premises are correct, there is great force in the suggestion.

From a comparison of these statutes it is manifest that they are dissimilar in many respects. The rate of compensation is different. The times entitling a patrolman to promotion from one grade to another are unlike. The provisions of chapter 180 relating to this subject are complicated, inconsistent and confused, while chapter 182 is clear and explicit. The purpose of the legislature may well have been, and doubtless was, to change the provisions of section 11 of chapter 180 to render them certain and definite, so as to avoid the confusion that was liable to arise under the former act. Under these circumstances, we find no force in the argument of the appellant based upon the fact that the legislature had previously passed chapter 180, as the premises upon which the appellant has based his argument are without foundation.

The case of *In re Dobson* (146 N. Y. 357, 360) is relied upon by the appellant as sustaining his contention. We do not think the principle of that case in any way aids him. It was there held that the rule, that a special statute providing for a particular case and applicable to a particular locality, is not repealed or modified by a subsequent statute, general in its terms, does not obtain where the intention of the legislature to repeal or modify a special law is clearly manifest. In that case it was in substance said that the intention of the legislature that the act under consideration should apply to the city of Brooklyn, was too clear to permit of the application of that principle; that the statute then under consideration declared that it was to apply to firemen in all cities having a population by the last census of more than nine hundred thousand; that the last census taken under the direction of the very legislature that enacted the law, showed that Brooklyn had more than the required population, which must have been known to the legislature, and, therefore, that it was impossible to say that the legislation was intended for the city

of New York alone.  That case, if an authority upon the question before us, would seem to be to the effect that the statute in question here, when it referred to the last census, should be construed as referring to the last census before the statute of 1884 went into effect.

Without further discussion of that question, we are of the opinion that the statute of 1884 was intended to apply to the city of New York, and that it should be construed as applicable only to such cities as had a population of eight hundred thousand as shown by the last census before the act was passed.

If the conclusion we have reached upon the question already considered were incorrect, still, there is another ground upon which the judgment must be sustained.  Subsequently to the passage of the statute relied upon by the appellant and in 1887, the Legislature passed chapter 348 of the Laws of 1887, the purpose of which was to regulate the grade and fix the compensation of members of the police force who were appointed as patrolmen or doormen on or after July 1, 1887, in all the cities of this state having, according to the last census, a population exceeding five hundred thousand, and not exceeding eight hundred thousand. At that time there was no city in the state except the city of Brooklyn which came within the provisions of that act, so that the real intent of the act was to provide for the grade and compensation of patrolmen in the city of Brooklyn.  Subsequently and in 1888, an act to revise and combine in a single act all existing and local laws affecting the public interests in the city of Brooklyn, was passed (Laws 1888, ch. 583), which in effect carried into the charter of that city the provisions of the act of 1887.

It was under this act that the plaintiff was appointed, and he was fully paid the compensation established in pursuance of its provisions.  In considering whether the statute of 1884 or the act of 1888 is to govern as to the compensation of patrolmen in the city of Brooklyn, it is to be observed that the provisions of the latter are so clearly inconsistent with and

repugnant to the former that they would nullify each other, and hence the two cannot be reconciled or stand together. Therefore, the older must yield to and be considered as repealed by the latter. (*Lyddy* v. *Long Island City*, 104 N. Y. 218.) Moreover, the statute of 1888 covers the whole subject of the former act, so far as the city of Brooklyn is concerned, and must be treated as a substitute for the earlier legislation. (*People* v. *Gold and Stock Tel. Co.*, 98 N. Y. 67.) It is only by giving the latter statute that effect that the inconsistency between these statutes can be avoided.

Again, it was clearly the intent of the legislature to provide for establishing the compensation of patrolmen in the city of Brooklyn by the special act of 1887, and by the act of 1888 to carry the provisions of that statute into the charter of the city and make it the governing, controlling and only rule applicable to that subject. Such being its intent, the statute of 1888 must be regarded as controlling. (*Anderson* v. *Anderson*, 112 N. Y. 104.) The legislature was dealing with the subject of patrolmen in the city of Brooklyn, their appointment, grade and compensation. It must have intended by that statute to provide the only statutory rule that was applicable to patrolmen of that city. Such must have been its only object and purpose. The question whether, in the absence of an express repeal, a subsequent statute repeals a preceding one, is always dependent for its solution upon the intent of the legislature. It is difficult to imagine a case where the intent could be more clearly disclosed. If such was not its plain purpose, then it must have intended to enact two inconsistent statutes relating to the same subject, both to remain in existence and operation at the same time, which would necessarily create uncertainty and confusion and breed contention and unnecessary litigation. We cannot suppose such to have been the intention of the legislature.

We are of the opinion that the statute of 1888 rendered the statute of 1884 inoperative as to the city of Brooklyn, even if previously applicable to that city. The courts below

were clearly right in holding that the plaintiff was not entitled to any other compensation than that established under the provisions of that statute, and, therefore, the judgment should be affirmed.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.